And we'll proceed to the next case on the oral argument calendar, which is CorCivic v. Candide Group. Good afternoon, Your Honor. May it please the Court. My name is Libby Locke on behalf of the Plaintiff Appellant, CorCivic. This appeal presents the question of whether California's anti-SLAPP statute can apply in federal court under the framework announced by the Supreme Court in Shady Grove. The answer is no. Every circuit court that is considered Shady Grove's majority opinion, six circuits in all, has held that state anti-SLAPP statutes, including California's anti-SLAPP statute, cannot apply in federal court. This is a question of first impression for the Ninth Circuit. As the District Court correctly recognized in its March 6, 2021 order, quote, the relationship between California's anti-SLAPP statute and Shady Grove remains an expressly undecided issue in our circuit, including as to attorney's fees. There is, as the District Court explained, quote, no binding decision on point. Now, to be sure, this court has considered the viability of anti-SLAPP statutes in federal court, and there is a long line of cases that grapple with that question. But remarkably, no party has asked this court to consider the question of how Shady Grove's revised framework impacts this court's anti-SLAPP jurisprudence. And there is no dispute among the parties that Shady Grove changed the legal landscape. Appelli's brief at page 22 makes this very clear. Before Shady Grove, courts would consider whether the state law directly collides with the federal rules of civil procedure, or whether the state and federal law can exist side by side. Mr. Locke, can I interrupt you for just a second? And this may be an irreverent question, but what if we take a look at anti-SLAPP statutes as merely modifying the relief of state court defamation actions as a matter of substance, rather than whether they conflict in procedure with the federal procedural rules? If what the — if you take California defamation and implied defamation statutes and meld them together with anti-SLAPP provisions, you come to the conclusion that in some defamation cases it's harder for the plaintiff to prevail if it's a First Amendment action. Now, wouldn't that get rid of all the probable or possible procedural conflicts between Shady Grove and anti-SLAPP and Rule 56 and Rule 12? No, Judge Bea, and here's the reason why. Rule 11 answers the very question that the state anti-SLAPP statute purports to be a free discovery motion challenging the sufficiency of plaintiff's complaint. What is the standard that applies for applying — for applying fees? And here, the California anti-SLAPP statute is only a two-and-a-half-page statute, expressly ties the award of fees to the loss of this particular procedural motion. It does not — the SLAPP statute does not purport to alter the right to petition to freedom of speech. It provides, instead, a procedural device on a special motion to strike to consider a special class of claims. Rule 11, Rule 8, and Rule 12 address that very same question and answer it. And then, therefore, according to Shady Grove, the only question is whether those rules are valid under the Rules Enabling Act. And defendants attempt to avoid this straightforward analysis by arguing that Shady Grove only applies to procedural laws and that — that the provision is just a — or to shift fees is a substantive law. But that puts the cart before the horse. The very point of Shady Grove was to prevent courts from wading into Erie's murky waters to make a substantive procedural distinction under Hannah v. Plummer. And as these six other circuits have recognized, these state anti-SLAPP statutes conflict with Rule 8, Rule 12, and Rule 56, and so too with Rule 11, as both the D.C. Circuit and Second Circuit have recognized. What do we do — what do we do with the case of Planned Parenthood Federation 2018? So Planned Parenthood, to this court's credit, attempted to apply both the rule — the federal rules of civil procedure, Rule 12 and Rule 56, side by side with the California anti-SLAPP statute. Right. It did so without the benefit of briefing on Shady Grove. Well, wait a minute, though. I mean, before — we have to apply Planned Parenthood. We can't overrule it. So post-Planned Parenthood, is there any conflict in our circuit between Rule 12 and the anti-SLAPP statute? There is. And respectfully, Your Honor, I would submit that this court does not need to follow Planned Parenthood because the question of Shady Grove was never presented in the briefing in Planned Parenthood. And no en banc or panel decision addressed the question of Shady Grove. In fact, if you look back to Judge Gould's decision in Planned Parenthood, it applied the very same, can these laws, can the federal law and state law exist side by side analysis from Newsham in 1999, which Shady Grove then abrogated. There has been an intervening change of the law. The 10th Circuit in the Stender case in 2020 recognized that Shady Grove has been an intervening change of the law. But, Ms. Locke, Shady Grove didn't deal with an anti-SLAPP statute. It dealt with class action certification. Our rule under Miller v. Gammy is that we must follow Planned Parenthood unless the case has been — an intervening authority is clearly irreconcilable. Now, you're not saying that Shady Grove is clearly irreconcilable with Planned Parenthood, are you? I am saying it is clearly irreconcilable with the analytical framework that Planned Parenthood put in place. Planned Parenthood, if you look back at the analytical framework, it applied the, does the law directly collide or can they exist side by side? Shady Grove, on the other hand, says, does a valid federal rule answer the same question? And it does not matter whether they can — whether the federal rule and the state rules can coexist. That is the change in the analytical framework. Well, what do you make about Shady Grove's 4-1-4 split, with Justice Stevens being the opinion, and he uses the words direct collision? So respectfully, Justice Stevens' decision was a concurrence to which no other justice in the Supreme Court signed on to. And that's where the First Circuit and Godin got it completely wrong. And if the court looks at page 87 in the Godin decision, it erroneously read Justice Stevens' concurrence as the majority decision. The majority decision in Shady Grove is part 1 and 2a of Shady Grove, where Justice Scalia announced the decision of the court. And to borrow a phrase from Justice Scalia, I don't think this panel needs to wade into the murky waters of what is Justice Stevens' concurrence, because just two weeks ago, a panel of this court looked at Shady Grove in a different context, but held that Rule 8 is a valid rule. And that was the Martin v. Pierce case, where the Martin v. Pierce case, a panel of this court, properly applied Shady Grove's framework, not in an anti-slap context, mind you, but I think it's illustrative for this court and how to apply Shady Grove. But this court, by looking at Shady Grove for the very first time in the anti-slap context, is bound by Shady Grove. And by failing to follow Shady Grove, it will create a direct circuit split with the Second Circuit in La Liberté on this California anti-slap statute. Counsel, if I can interject a question, please. Has this circuit in several cases applied Newsham and anti-slap principles after the decision was made in Shady Grove? Yes, so Planned Parenthood did cite back to Newsham, and that is why we think Planned Parenthood is an abrogated case law and an abrogated reading of Newsham, which was abrogated by Shady Grove. None of the... When you say Newsham was abrogated by Shady Grove, did Shady Grove say that expressly? No, Shady Grove did not address the anti-slap context. But if you look at Planned Parenthood, it applies the same. Do the rules directly collide or can they exist side by side? That was the analytical framework that Newsham set forth. And also, Planned Parenthood did pull back from the Newsham decision in saying, well, we're going to interpret Rule 12. We're going to look at the anti-slap statute and apply Rule 12 and Rule 56 standards and pull back from the Newsham. And this court has done so in a variety of other circumstances, including the Sarver case eliminating the timing provisions. I'd like to spend just a few minutes on the merits because I don't want that to go unaddressed. Korsavik pled defamation claims based on two distinct sets of statements, false statements implying that Korsavik operates immigrant detention facilities for children who are separated from their parents at the U.S. border pursuant to the Trump administration's family separation policy, as well as false statements about Korsavik's lobbying efforts. Now, regarding the statements implying falsely that Korsavik separated children, there can be no reasonable dispute that these articles falsely implied this fact. In fact, defendants expressly admit in their October 10th update to the article that the term family separation tends to focus on the detention of children. And in fact, these articles, the text of them, reinforce this understanding. Defendants say, quote, Korsavik manages some of the detention centers that have been at the heart of the controversy over the separation of families and incarceration of individuals for crossing the U.S. In a statement, quote, every child, no matter where he or she is born, deserves to be tucked into a safe bed to sleep. And it juxtaposed that statement with a photo of protesters carrying signs that says, I am a child, families belong together. And the articles even talk about allegations of sexual abuse of migrant children. This political and media environment in which these statements were made is incredibly important. The families belong together movement did not arise in response to adults being detained for their own violations of law. Instead, it arose out of viral media images of children in cages in Mylar blankets after being ripped from their parents arm in facilities in Texas that Korsavik did not operate. They did not operate. And linking the movement of families belong together to Korsavik, along with this photo and these statements, conveyed that Korsavik was doing something that it was not doing. And this this admission is dispositive. With that, I'd like to reserve the remainder of my time for rebuttal. Thank you, counsel. We'll hear from Mr. Burke. Is the court comfortable? Is counsel comfortable if I take off my mask? Yes. May it please the court, Thomas Burke of Davis Wright Tremaine on behalf of Morgan Simon and Candide Group. I'd like to first address the Shady Grove arguments and then I'll go back into the adamacy that the anti-SLAPP statute should not be available in federal court is both wrong and it is radical. Korsavik wrongly argues that the Ninth Circuit failed to consider potential conflicts between state law and federal rules when it decided Newsham in 1999 and that the Ninth Circuit ignored Shady Grove when it was decided in 2010. Judge Gould's opinion in Planned Parenthood decided in 2018 followed Newsham, as did 2021. For over two decades, this has been the consistent law of the circuit. And to be clear, the Ninth Circuit, I'm probably stating the obvious, certainly knows about Shady Grove. It cited it 19 times in its rulings since it was enacted. For example, in January 31st, in Ellis versus Salt River Project, a case far closer than the facts of Shady Grove than this one, the Ninth Circuit analyzed Shady Grove and found that an Arizona law that imposed a procedural prerequisite on class actions was not in conflict with Shady Grove. But Korsavik isn't just arguing that Newsham was advocated by Shady Grove, it argues that all Ninth Circuit rulings since Shady Grove, all of the authority for the last two decades plus by this court should be vacated with respect to the SLAPP statute's use in federal court. But this is a false construct for two reasons. Judge Bea, did you have a question? No. OK. First, it overlooks the consistent view of the Ninth Circuit applying Newsham for over two decades. The Newsham opinion has been cited by 450 courts and by 50 different cases by the Ninth Circuit. As Judge Gould explained it in Planned Parenthood, our interpretation eliminates conflicts between California's anti-SLAPP laws, procedural provisions and the federal rules of evidence. In Makoff, when this court voted not to review en banc the issue of the SLAPP statute's availability in federal court, the Makoff court said that the anti-SLAPP statute in California supplements rather than conflicts with federal rules. And the second reason why this contention by Korsavik is extreme is that if it's really carried to its full effect, it eviscerates the Erie doctrine. Erie asks whether a state law is substantive or procedural. Erie protects against forum shopping and the inevitable administration, inequitable administration of laws. It's the twin goals of Erie, as it's often referred to. These two problems are going to immediately result if the anti-SLAPP statute becomes unavailable in federal court. Shady Grove did not involve the same important speech and state interests that are in play with California's anti-SLAPP statute. And as Judge Thomas referenced, the majority of justices in Shady Grove recognized in, I believe in particular in Judge Stevens' concurring opinion, recognized that state interests are significant even in determining whether or not there's a conflict. But to be clear, in this appeal, the only issue is the motion to strike provision of California's anti-SLAPP statute. Judge Alsup applied the Rule 12b6 standard when he granted the anti-SLAPP motion, the anti-SLAPP statute, to dismiss Korsavik's lawsuit with prejudice. So even Korsavik admits, and in fact it emphasizes it on page three of its reply, that the issue of attorney's fees recovery and all of that, it's not attended to this appeal. It's not a part of this appeal because that issue was put in abeyance by Judge Alsup. This appeal involves an effort by Korsavik, which is one of the nation's largest private prison companies, to silence Morgan Simon after she engaged in free speech fully protected by California's anti-SLAPP statute. Her Forbes.com posts profile the work of a large grassroots movement called the Belong Together Coalition and their campaign to persuade banks to stop providing financing to private prison companies. The efforts of the Families Belong Together Coalition highlighted Korsavik's role in the incarceration of immigrants detained after crossing the U.S. border during the Trump administration. Ms. Simon's posts were factually accurate. There's nothing false about saying that Korsavik financially profited from the border or they profited from the pain and suffering. Doesn't that sort of implicate that they had something to do with causing the pain and suffering? They did. They were making, they were did in the sense that the implication is that Korsavik was causing the pain and suffering of separation between parents. I'm not able to hear you. Oh, I think council has admitted that that the implication of the statements was that Korsavik was benefiting and causing the separation of children and parents. Is that understood by this lobbying efforts? Right. Your Honor, I'm I'm focusing at the moment on I'm focusing moment on the on the separation of families statements. But in response to your question, I believe that by being paid hundreds of millions of dollars to house immigrant parents and by lobbying for it, that's how they, that's how they get their business. The implication is, of course, Korsavik had something to do with the separation of the parents and the children and causing the pain and suffering. They were certainly implicated in in the separation of of families from from their children. Correct. Critically, however, Ms. Simon never wrote that Korsavik incarcerated children separated from their families at the border. But at the hearing on the anti-slap motion, after Judge Alsup listened to Korsavik's argument that it did not house children separated from their parents, he twice had Korsavik's counsel concede that Korsavik, in fact, operates detention facilities for adults. As Judge Alsup put it, I think capturing the gist and sting, now I'm learning for the first time after an hour and a half that no, after the children had been ripped from your arms, you housed the parents. That's a direct quote from the from the hearing. Indeed, Ms. Simon's posts accurately reported that Korsavik shares in a billion dollar ICE contract to operate facilities where adult immigrants are incarcerated. Now, remarkably, on appeal, despite the admission before Judge Alsup, Korsavik continues to play games with the family separation statement. Repeatedly in its briefs filed in this court, Korsavik places quotes around language that Ms. Simon never used in her Forbes.com posts. I'll explain this. If you look at, well, it occurs on eight different times in Korsavik's briefs, five times in its principal brief at pages 9, 13, 17, 55, and 58, and three times in Korsavik's reply brief at pages 4, 12, 13, and 25. I suspect this panel and its law clerks may have been similarly confused by these quotation marks, but here's an example. On page 17 of the reply brief, Korsavik writes, quotes, defendant's statements that Korsavik, quote, operates immigrant detention facilities for children separated from their parents at the U.S. border, end quote. Those quotes repeated eight times are not from Ms. Simon's Forbes.com brief. They are instead quoting from Korsavik's complaint. Nowhere in Ms. Simon's posts does Ms. Simon ever state that Korsavik incarcerates children. The truth is exactly what Judge Alsop confirmed in his dismissal order. It turns out that Korsavik did, in fact, operate detention facilities for parents separated from their children pursuant to the Border Patrol's family separation policy. On this record, Korsavik should have no credibility with this court. On the merits, first, with respect to the family separation statements, Korsavik fails to allege that the family separation statements are false, which is obviously a requirement in a defamation case. Korsavik's complaint merely alleges repeatedly that Korsavik has never operated any immigration detention facilities for children. But Simon's, again, Simon's challenge statements never said that. Rather, the family separation statements were talking about the families belong together movement against private prisons. The movement led to greater scrutiny of immigrant detention facilities and the private prison companies like Korsavik, who operate a third of those facilities. But again, Korsavik doesn't plead that there's anything false in Simon's statements. This is because Korsavik is a private prison company and it does incarcerate immigrants, as Korsavik admitted to Judge Alsop. But secondly, Korsavik's assertion that there's a determinatory sting from the family separation statements is simply not reasonable. When Ms. Simon refers to the work of the Families Belong Together Coalition in her post, she does not by any reasonable measure convey to a lay reader that Korsavik houses children separated from their families. Forsher instructs that an interpretation that requires extra sensitive perception to be heard is not a reasonable one. This is what Korsavik is urging here. If you accept Korsavik's strained implied defamation argument, that would violate subtle First Amendment protections, the breathing space that speakers enjoy when they are writing or speaking on matters of public concern. Here, Korsavik asks this court to tightly and impermissibly constrict Ms. Simon's breathing space when she was plainly writing about the efforts and focus of the Grassroot Families Belong Together Coalition. With respect to the legal lobbying statements, although Judge Alsop's order did not directly address the legal lobbying statements, the parties fully briefed this issue. This court's dismissal or Judge Alsop's dismissal of Korsavik's entire complaint likely reflected his frustration and feeling that Korsavik failed to state any claim for defamation. But because this court is reviewing in de novo, this court may affirm based on any supported by the record, and I believe there's three independent basises for affirming. First, the legal lobbying statements are not defamatory as a matter of law. And let's keep our eyes focused clearly on what those statements were. It is, quote, they make money when beds are filled, justly or unjustly, which is why they've spent $25 million on lobbying over the past three decades to push for harsher criminal justice and immigration laws. Classic rhetoric about a matter of public controversy. There is nothing intrinsically defamatory in saying that one of the nation's largest publicly traded private prisons has engaged in legal lobbying to benefit its bottom line. Korsavik has paid hundreds of millions of dollars a year through government contracts to incarcerate people. It's not running a poetry society. It's no different than saying that tobacco companies have fought health warnings on cigarette packs or gun companies have lobbied in favor of stand your ground laws. Korsavik wants Ms. Simon to publish its standard response that it uses in its lobbying reports. But nothing that she wrote accuses Korsavik of lobbying for legislation that would determine the basis for or duration of an individual's incarceration or detention, which is the language that they want them to use. Second, the legal lobbying statements are protected as Ms. Simon's disclosed facts opinion. The law is settled that if the factual basis of a person's commentary is disclosed and the facts disclosed are true, the commentary is protected. And Ms. Simon openly disclosed the factual basis for her legal lobbying statements by hyperlinking to the National Public Radio and Business Insider articles that were also referenced in the NPR piece. And they discussed Korsavik's lobbying activities and they discuss a Justice Policy Institute white paper. All of those publications are found in the supplemented excerpt of records at 155 and 224. Importantly, and I think dispositively, Korsavik in its complaint admits that Simon read and relied on those two articles.  Further, in paragraph 102 of its complaint, Korsavik also admits, for example, that it lobbied for legislation to block prisoners' use of contraband cell phones. Third, because Ms. Simon fully disclosed the factual basis of her lobbying statements, this court can also independently dismiss Korsavik's claim due to a complete absence of actual malice. Korsavik waived any argument that it's not a public figure. And under the Rule 12B6 standard, the Korsavik must set out sufficient facts to make a claim of actual malice plausible on its face. It cannot do this here. It's not even close. I'm happy to address any other questions that the court may have if there are any. Is it your position that the disclosure of the factual basis eliminates the possibility of a finding of actual malice? Yes, it is because it reflects her state of mind. She promptly, days after a correction demand came in, she published a clarification and said, I didn't say that, that's not what I'm implying, made that very clear. That's completely inconsistent with the idea that she was publishing the statement trying to say the statements that are accused, she's accused of in this case. We would ask that the court affirm. In this instance, this is a classic example of a SLAPP statute, and it illustrates why the availability of the anti-SLAPP statute protection is so vital. So we ask this court to affirm its dismissal. Thank you, counsel. We'll hear rebuttal. Thank you, Your Honor. Three points. Planned Parenthood, the parties in Planned Parenthood never briefed the issue of Shady Grove. The words Shady Grove do not appear in the Planned Parenthood briefing whatsoever. Second, the question of fees is on. How do you deal with MAKOF, though? MAKOF was a concurrence of the. In the concurrence, Shady Grove was cited and there was an en banc call based on Shady Grove that failed. So I find it hard to hard to find or hard to agree with you that this course never considered Shady Grove. Shady. So the MAKOF court was the opinion of four judges, not and it was not a controlling decision. And in particular, in the merits of MAKOF of those of the judges, those four judges at the time, they did not address Rule 8, which this court has since addressed Rule 8 and did not address. In fact, let me read it says in MAKOF it says Rules 12 and 56 do not provide that a suit if their requirements are met. Instead, they provide various theories upon which a suit may be disposed of for trial. But that's precisely what Rule 8 addresses. And the MAKOF concurrence did not consider Rule 8, which does provide, as the Carboni case in the 11th Circuit notes, the the requirements or the right of a plaintiff sets forth the standards for what a plaintiff has to prove in order to survive a pre-discovery dismissal, pre-discovery challenge to the sufficiency of the complaint together with Rule 12 and Rule 56. On the merits, let me just so Defense Council has spent a lot of time suggesting that we made an admission below that we simply did not make. And I think it's important for the panel to hear precisely what was said in that oral argument in response to a question from the trial judge about what about who poor civic detains. Here's what the response was. They do operate detention facilities for adults. They do not separate children from their parents, nor do they operate immigrant detention facilities for children separated from their parents. There is no fact before this court or before the in this record on appeal that we have housed a parent of a child separated from pursuant to the Trump policy at the border. Poor civic does not run facilities for parents. They do not run and they certainly don't run facilities for parents pursuant to the Trump policy. Poor civic houses adults regardless of parental status. And that is that is incredibly important because here where there is an where there is an implication that we were housing children and as defendants have admitted that that is a reasonable interpretation because the term family separation tends to focus on the detention of children. As the Cato Kaelin versus Globe case says, where there is a reasonable interpretation, the only it is a question for the jury, not for the court to decide what that implication was. And I think, again, it's important to note that the defendants own articles talk about every child, no matter where he or she is born, deserves to be tucked into a safe bed. Counsel, counsel, you're way off your time. Thank you, Your Honor. I would ask the court to reverse and remand. Thank you. Thank you for your arguments. Thank you both. Both counsel for their briefing and presentations today. And the case just argued to be submitted for decision.
judges: THOMAS, GOULD, BEA